**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 26-CR-57 (RBW)** |
| **KANDRA NOVA,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The defendant, Kandra Nova, is before this Court after pleading guilty to one count of Illegal Transactions with an Access Device, in violation of 18 U.S.C. § 1029(a)(5). Despite being compensated at $85,000 annually for her full-time work at Jobs with Justice, she defrauded her employer to the tune of tens of thousands of dollars. Because the defendant acknowledged her conduct to the government, quickly pled guilty once she learned of the investigation, and appears genuinely remorseful, the government is only seeking a period of supervision. Consistent with the sentences authorized by the U.S. Sentencing Guidelines and considering her parenting responsibilities, the United States requests that the Court sentence the defendant to 5 years of probation. The government also requests that the Court order her to pay $31,415.97 in restitution. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

## I.    FACTUAL BACKGROUND

The factual proffer to which the defendant agreed as part of her April 8, 2026 guilty plea establishes the following uncontested facts:

Between December 2019 and August 2022, Kandra Nova resided in Maryland and worked as

1

the Finance Director for Jobs with Justice, a non-profit organization based in Washington, D.C.

As Finance Director, Nova had access to an access device, namely, the company credit card of another employee, M.B.

Between December 2020 and September 2022, Nova made purchases using M.B.'s company credit card for Nova's personal use.

M.B.'s company card was issued by U.S. Bank which was headquartered in Minneapolis, Minnesota. During that time period, U.S. Bank sent monthly credit card statement's addressed to M.B. in Washington, D.C.

Using M.B.'s card, Nova made $9,889.00 in purchases from Amazon.com, Inc., a company headquartered in Seattle, Washington. The purchases included supplies for Nova's personal esthetician business. The transaction dates spanned from December 2020 to September 2022.

Using M.B.'s card, Nova made $2,266.59 on M.B.'s card from Target Corporation, a company headquartered in Minneapolis, Minnesota. Nova ordered items online and had them shipped to her home in Maryland. The transaction dates spanned December 2020 to September 2022.

Using, M.B.'s card, Nova purchased $4,540.10 in international flights from Delta Air Lines, Inc. for herself and her family for her family on January 6, 2022. The flights were between Washington, D.C. and the Dominican Republic. Delta Airlines is a company headquartered in Atlanta, Georgia. As a result of the purchase using M.B.'s company card, Nova and her family traveled to the Dominican Republic from the United States in January 2022.

Using M.B.'s card, Nova purchased $5,937.00 in products from Apple, Inc., a company headquartered in Cupertino, California between March 2021 and July 2022. As a result of Nova's purchases, Apple shipped items, including earbuds and an iPhone to Nova's home in Maryland.

Using M.B.'s card, Nova purchased $2,792.00 in products from Best Buy Co., Inc., a company

headquartered in Richfield, Minnesota between December 2020 and September 2022. As a result of Nova's purchases, Best Buy shipped products to Nova's home in Maryland.

Using M.B.'s card, Nova purchased $3,812.28 in products from Instacart (incorporated as Maplebar, Inc.), a company headquartered in San Francisco, California between November 2021 and August 2022. As a result of Nova's purchases, Instacart shipped products to Nova's home in Maryland.

Using M.B.'s card, on April 26, 2022, Nova purchased $2,179.00 in concert tickets for a Karol G concert in Washington, D.C. from Ticketmaster, Inc., a company headquartered in West Hollywood, California.

Nova's purchases using M.B.'s card caused $31,415.97 in loss. In making the purchases, Nova acted with the intent to defraud.

On March 18, 2026, the government filed an information charging the defendant with one count of Wire Fraud in violation of 18 U.S.C. § 1029(a)(5). (ECF 2). On April 8, 2026, the defendant entered a guilty plea to that sole count. (ECF 7).

## II.    LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

*Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).  The listed factors in 18 U.S.C. § 3553(a)

include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>> (i) issued by the Sentencing Commission ...; and
>>> (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
>> (A) issued by the Sentencing Commission ... and
>> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

### III.   UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

#### A.  The Defendant's Total Offense Level is 8

The defendant's total offense level is 12 under the calculations listed below and ultimately

8 based on further adjustments:

*Count One: 18 U.S.C. § 1029(a)(5)*

| | | |
|---|---|---|
| U.S.S.G. §2B1.1(a)(2) | Base Offense Level | 6 |
| U.S.S.G. §2B1.1(b)(1)(C) | Specific Offense Characteristic: Loss Amount More than $15,000 | 4 |
| U.S.S.G. §3B1.3 | Abuse of Trust | 2 |
| | Total: | 12 |

The base offense level for Count One is 6 under U.S.S.G. § 2B1.1(a)(2) because, as discussed below, the offense involved fraud and deceit.  A four-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(C) is applicable here because the defendant caused a loss of between $15,000 and $40,000t.  Because the defendant abused her position of trust as Finance Director at Jobs with Justice, another two levels are added under U.S.S.G. § 3B1.3.  Based on the plea agreement, a two-level reduction is appropriate under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.  Finally, another two-level reduction is appropriate as the defendant meets the criteria of a Zero-Point Offender under USSG §§ 4C1.1(a) and (b).

**B. The Defendant's Criminal History Category is I, and Her Guidelines Range Is  0-6 Months' Imprisonment**

The government concurs with Probation's assessment of the defendant's criminal history, as set forth in the PSR. U.S.S.G. § 4A1.1 governs the calculation of a defendant's criminal history for Guidelines' purposes. Section 4A1.1 assigns "points" for each of defendant's prior sentences of imprisonment; the number of criminal history "points" assigned to each sentence depends on the severity of the sentence and when it was imposed. U.S.S.G. §§ 4A1.1(a)-(d). As reflected in the PSR, the defendant's total criminal history score is zero, establishing a criminal history category of I. *See* PSR at 18, ¶34.

With a criminal history category of I and a total offense level of 8, the defendant's guidelines range is 0-6 months' imprisonment. As previously acknowledged, the government will cap its allocution at a non-carceral sentence, which is consistent with Guidelines range.

## IV.    THE GOVERNMENT'S SENTENCING RECOMMENDATION

The crime at issue here merits a meaningful term of supervision. In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the desire to avoid unwanted sentence disparities, § 3553(a)(6).

### A.  Nature and Circumstances of the Offense

This offense was serious, premeditated, and covert.  Courts have acknowledged that the abuse of a position of trust is particularly egregious.  *See, e.g.*, *United States v. Gaughan*, No. 20-CR-00128 (TSC), 2025 WL 2318696, at *2 (D.D.C. Aug. 12, 2025) (noting particular seriousness where defendant abused "his position of trust in a non-profit organization")*; United States v. Bikundi,* No. CR 14-30-1 (BAH), 2020 WL 5518465, at *5 (D.D.C. Sept. 14, 2020).

For almost two years, the defendant bilked her employer—a nonprofit advocating for workers' rights and standard of living—out of tens of thousands of dollars to finance her lifestyle. She used company funds for international airline tickets for herself and her family, concert tickets, and beauty products for her esthetician business.  Essentially, she treated the company credit card as her own personal piggybank to fund her lifestyle.  This was not a one-time lapse in judgment on the part of the defendant, but an ongoing scheme to enrich herself.  She saw an opportunity for easy money and she took it, despite being in a position of trust as the Finance Director for the nonprofit.

**B. The History and Characteristics of the Defendant**

The defendant's criminal history tells a story of an individual with an upbringing free from abuse and with opportunities for education. As noted in the PSR, the defendant grew up in an environment free from abuse toward her or her siblings and did not experience any gun violence during her upbringing. *Id*. at 9, ¶41. She also has been in a stable relationship with her partner of more than ten years and resides with her family in a private five-bedroom home. *Id*. at 9, ¶42. The defendant also had already obtained her GED at the time that she committed the instance offenses and had her cosmetologist license in Maryland, showing that she had the capacity and follow-through to handle supporting herself through studies rather than stealing. *Id*. at 11, ¶53-54. Indeed, she is currently working toward a business degree online. *Id*. Most, startling, though, is her employment history, showing multiple six figure salaries along with several salaries in the upper five figures. *Id*. at 11, ¶56.

The defendant was not someone acting out of desperation who did not have other opportunities to support herself. The defendant was operating based on greed. She had the salary that many people never achieve in their lifetimes and yet she deceived her nonprofit employer for years until she was ultimately let go. This is an aggravating factor.

**C. The Need for the Sentenced Imposed to Afford Adequate Deterrence**

A meaningful sentence is necessary to achieve both specific and general deterrence. This conduct is serious and harms the community at large. While the defendant does seem remorseful, a significant term of supervision is necessary to deter her from ever being tempted to steal from an employer again and to deter others who might want to try and bilk some easy money from employers when they are given a position of trust. A meaningful term of supervision is therefore necessary to interrupt the defendant's behavior and to protect the public from further similar

7

conduct. A guidelines sentence communicates that such conduct will be met with firm and predictable consequences.

### D. The Desire to Avoid Unwanted Sentence Disparities

Finally, one of the goals of the Guidelines is to avoid sentence disparities among similarly situated defendants. According to data collected by the United States Sentencing Commission, of the firearms cases from the last five fiscal years where the defendant was sentenced pursuant to U.S.S.G. § 2B1.1, was an Offense Level 8 and had a Criminal History Category of I and received a sentence of incarceration, the average incarceration length was four months' imprisonment and the median incarceration length was three months' imprisonment. *See* United States Sentencing Commission, Judiciary Sentencing Information, "JSIN" https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited July 5, 2026). On the whole, the average imprisonment length was one month, and the median was zero months. *Id*.

As evidenced by the Sentencing Commission's data, the government's requested sentence of a term of 5 years of probation is measured, reasonable, driven by data, and squarely in line with sentences given to similarly situated defendants—particularly, whereas here, the defendant engaged in an ongoing scheme to defraud her employer. It also is warranted by the seriousness of the offense, protects the public, and promotes respect for the law.

### CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the court sentence the defendant to 5 years of probation and $31,415.97 in restitution.

Respectfully Submitted,

Jeanine Ferris Pirro
United States Attorney

By:    */s/ Caelainn Carney*

8

CAELAINN CARNEY
Assistant United States Attorney
N.Y. Bar No. 5751672
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-714-6433
Email: caelainn.carney@usdoj.gov